# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| CLEARVALUE, INC. AND RICHARD ALAN HAASE | § § § | |
| Plaintiffs | § § | |
| vs. | § § | CASE NO. 6:06 CV 197 |
| PEARL RIVER POLYMERS, INC., POLYCHEMIE INC., SNF INC., | § § § | |
| Defendants | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Post-Verdict Motion for Judgment as a Matter of Law ("JMOL") and, in the Alternative, Motion for New Trial ("MNT") (Docket No. 583), Plaintiffs' Amended Motion for Entry of Final Judgment (Docket No. 586), and Plaintiffs' Amended Motion to Vacate Sanctions Award (Docket No. 587). For the reasons stated below, the Court **GRANTS** Defendants' motion for JMOL and MNT (Docket No. 583) only as to misappropriation of Trade Secret #1 and **DENIES** the motion in all other respects, **GRANTS** in part Plaintiffs' motion for entry of final judgment (Docket No. 586), and **DENIES** Plaintiffs' motion to vacate sanctions award (Docket No. 587) in its entirety. Furthermore, this opinion sets forth the Court's findings of fact and conclusions of law regarding Defendants' equitable defense of inequitable conduct.

## BACKGROUND

Plaintiffs ClearValue, Inc. and Richard Haase ("Haase") (collectively, "ClearValue") filed suit against Pearl River Polymers, Inc., Polychemie, Inc., SNF, Inc., and Polydyne, Inc., and SNF

1

Holding Company on January 4, 2005. Polychemie, Inc., previously Pearl River Polymers, Inc., is a manufacturer of chemicals including polymers and polymer blends used to clarify water. SNF, Inc. is the industrial selling arm of SNF in the United States. Pearl River Polymers, Inc., Polychemie, Inc., and SNF, Inc. (collectively, "SNF") are the only remaining defendants in this case.[1] ClearValue asserts U.S. Patent No. 6,120,690 ("the '690 patent") against SNF and also argues that SNF misappropriated its purported trade secrets. The '690 patent is entitled "Clarification of Water and Wastewater." Haase is the sole named inventor of the '690 patent and founder and CEO of ClearValue, Inc. Haase licensed the '690 patent to ClearValue, Inc. ClearValue, Inc. is engaged in the clarification of water and wastewater, and its primary customers are municipal, military, and industrial water treatment facilities.

ClearValue contends the '690 patent teaches a process for clarifying water and wastewater using a "newly formulated" class of "high molecular weight quaternized ammonium polymers" and aluminum polymers. *See* '690 Pat. col. 1:7-17. The '690 patent describes these "newly formulated" high molecular weight polymers as having two important characteristics: a molecular weight of at least one million and a "viscosity greater than about 1,000 cps [centipose seconds] at a concentration of approximately 20% in water." '690 Pat. col. 3:1-4. The '690 patent identifies di-allyl di-methyl ammonium chloride ("DADMAC") as a quaternized ammonium polymer. The '690 patent identifies ammonium chloride ("ACH") as an aluminum polymer. '690 Pat. col. 2:58-59. The patent purports to teach that combining a high molecular weight ammonium polymer and an aluminum polymer

---

[1] At the close of ClearValue's case, the Court granted SNF's motions for JMOL on no direct and indirect infringement by Polydyne, Inc. and SNF Holding Company, no trade secret misappropriation of Trade Secret #1 by Polydyne, Inc. and SNF Holding Company, and no trade secret misappropriation of Trade Secrets #2 and #3 by Polychemie, Inc. and SNF, Inc.

clarifies water by separating impurities into solid "flocs" that are easily removed from the water. '690 Pat. col. 1:5-17; col. 3:59-67; col. 4:1-9, 49-54. The '690 patent also allegedly teaches the addition of other chemicals to the high molecular weight polymer and aluminum polymer blend, such as epichlorohydrin di-methyl amine ("Epi-DMA").

ClearValue claimed to have held the water clarification process technology described in the '690 patent as a trade secret until the '690 patent issued on September 19, 2000. ClearValue presented its purported Trade Secret #1 to the jury as: "to use a combination of high molecular weight organic polymers, specifically DADMACs or Epi-DMAs, and aluminum chlorohydrate [ACH] to clarify water." ClearValue also claimed to have possessed trade secrets related to manufacturing stable blends of the various polymers described in the '690 patent. ClearValue presented its purported Trade Secret #2 to the jury as "the use of sodium persulfate, rather than ammonium persulfate, in the manufacturing process of DADMACs." Lastly, ClearValue presented its purported Trade Secret #3 to the jury as: "the adjustment of the 'pH' to approximately 4.0 to increase both stability and shelf life of both DADMACs and Epi-DMA's."

The first trial of this case began on March 26, 2007. During the third day of trial, the Court became aware of a possible discovery violation by ClearValue. The next morning, the Court excused the jury for the day and held an all-day hearing on sanctions. After the sanctions hearing, the Court found that Haase, ClearValue, Inc., and ClearValue's attorney at the time, Gordon Waggett, had engaged in sanctionable conduct. As a result of this finding, the Court imposed the ultimate sanction, striking ClearValue's pleadings, entering judgment for SNF, and awarding SNF recovery

of attorneys' fees, costs, and expenses.[2]  *See* Docket No. 310.  ClearValue and Waggett appealed the Court's finding of sanctionable conduct.  On March 24, 2009, the U.S. Court of Appeals for the Federal Circuit affirmed the Court's finding of sanctionable conduct; affirmed the award of $121,107.38 in attorneys' fees under Federal Rules of Civil Procedure 26 and 37 as to ClearValue, but reversed as to Waggett; reversed the Court's striking of ClearValue's pleadings, the resulting entries of judgment in SNF's favor on all claims and counterclaims, and the award of all other attorneys' fees and costs; and remanded the case to this Court for adjudication of ClearValue's claims and SNF's counterclaims.

The Court entered a Scheduling Order on August 20, 2009, setting this case for a new trial on April 12, 2010.  ClearValue retained new trial counsel for the second trial of this case.  Following a five day jury trial, the jury returned a verdict finding that SNF had misappropriated Trade Secret #1 and finding claim 1 of the '690 patent not invalid and infringed.  The jury awarded $3,000,000 in trade secret misappropriation damages and $2,172,617 in patent infringement damages.  The Court also conducted a bench trial regarding SNF's additional inequitable conduct defense.

## SNF'S MOTIONS FOR JMOL & NEW TRIAL

### JMOL Standard

"The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie."  *Summit Tech. Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004).  In the Fifth Circuit, JMOL may not be granted unless "there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did."  *Hiltgen v. Sumrall*, 47 F.3d 695, 700

---

[2] The Court awarded $121,107.38 in attorneys' fees under Federal Rules of Civil Procedure 26 and 37, $360,863.87 in attorneys' fees and $613,410.74 in costs and expenses under the Court's inherent powers, $1,628,039.05 in attorneys' fees under 35 U.S.C. § 285, and $47,677.30 as costs under 28 U.S.C. § 1920.

(5th Cir.1995) (internal quotation marks omitted). A court reviews all the evidence in the record and must draw all reasonable inferences in favor of the nonmoving party, however, a court may not make credibility determinations or weigh the evidence, as those are solely functions of the jury. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

**New Trial Standard**

Under Rule 59(a) of the Federal Rules of Civil Procedure, a new trial can be granted to any party to a jury trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985).

**SNF'S MOTION FOR JMOL & MNT - MISAPPROPRIATION OF TRADE SECRET #1**

SNF first moves for JMOL and, in the alternative, requests a new trial on ClearValue's Trade Secret #1 arguing that there is no evidence that what ClearValue claims as Trade Secret #1, use of a combination of high molecular weight organic polymers, specifically DADMACs or Epi-DMAs, and ACH to clarify water, was actually a secret.

The Court considers six factors in determining whether the particular combination claimed by ClearValue is a trade secret: (1) the extent to which the information is known outside the claimant's business; (2) the extent to which the information is known by employees and others involved in the claimant's business; (3) the extent of the measures taken by the claimant to guard the secrecy of the information; (4) the value of the information to the claimant and to its competitors; (5) the amount of effort or money expended by the claimant in developing the information; and (6)

the ease or difficulty with which the information could be properly acquired or duplicated by others. *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003). SNF focuses on the first factor, alleging that ClearValue's purported Trade Secret #1 was publicly disclosed by the publication of U.S. Patent No. 4,800,039 ("the Hassick patent") and was already being marketed and offered for sale by SNF and Calgon, a manufacturer of polymers and polymer blends and former competitor of SNF's. Trial Tr. 4/13/10 A.M., 120:7–121:7.

In its post-verdict briefing, ClearValue for the first time contends that Trade Secret #1 was not just that one could combine high molecular weight DADMACs with ACH to clarify water, but that this combination "actually worked" to clarify water. Docket No. 594, at 4. However, ClearValue did not present Trade Secret #1 to the jury in this manner. The Court specifically instructed the jury that "Trade Secret #1 is to use a combination of high molecular weight organic polymers, specifically DADMACs or Epi-DMAs, and aluminum chlorohydrate [ACH] to clarify water." Docket No. 559, at 5, 8. ClearValue cannot alter its purported trade secret post-verdict. Thus, the Court must determine whether there was a legally sufficient evidentiary basis for the jury to find that ClearValue's purported Trade Secret #1 was not publicly disclosed before Haase's disclosure to SNF in 1996.

ClearValue's principal argument regarding purported Trade Secret #1's disclosure in the Hassick patent is that the Hassick patent "teaches away" from the use of a high molecular weight DADMAC and ACH combination to clarify water. Inherent in ClearValue's argument is an admission that the Hassick patent does disclose the actual combination of high molecular weight DADMACs with ACH to clarify water, and ClearValue's "teaching away" argument does not affect that disclosure. Furthermore, whether the Hassick patent anticipates or makes obvious the actual

invention which was eventually claimed in the '690 patent is not relevant to the trade secret issue. What is relevant is whether ClearValue's purported Trade Secret #1, as presented to the jury during trial, was disclosed to the public in the Hassick patent. ClearValue's own expert, Jim Stoll, recognized that the Hassick patent disclosed the combination. *See* Trial Tr. 4/14/10 P.M., 160:23–161:12. The Court finds that Hassick discloses the "use [of] a combination of high molecular weight organic polymers, specifically DADMACs or Epi-DMAs, and aluminum chlorohydrate [ACH] to clarify water" and ClearValue's purported Trade Secret #1 was not a trade secret when Haase disclosed the combination to SNF in late 1996 or early 1997.

Accordingly, because there is no evidence to support the jury's finding that ClearValue's purported Trade Secret #1 was in fact a trade secret, the Court **GRANTS** SNF's motion for JMOL of no misappropriation of purported Trade Secret #1.

### SNF'S MOTION FOR JMOL & MNT - NO INDIRECT INFRINGEMENT OF '690 PATENT

SNF next moves for JMOL and, in the alternative, requests a new trial on ClearValue's claims for indirect infringement of claim 1 of '690 patent. SNF presents four general arguments: (1) there is no evidence of direct infringement by SNF's end user customers, (2) there is no evidence that SNF's accused products exceed the one million molecular weight threshold required by claim 1, (3) there is no evidence to support the jury's finding that there are "no substantial non-infringing uses" for SNF's accused products, and (4) there is no evidence to support the jury's finding that SNF, Inc. actively induced others to infringe claim 1.

Infringement is a question of fact that is reviewed for substantial evidence when tried to a jury. *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008). A cause of action for contributory infringement flows from 35 U.S.C. § 271(c):

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c).

Induced infringement is a separate cause of action from contributory infringement. "In order to prevail on an inducement claim, the patentee must establish first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *ACCO Brands, Inc. v. ABA Locks Mfr. Co.,* 501 F.3d 1307, 1312 (Fed. Cir. 2007) (internal quotation marks omitted). "[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Id.* at 1306. Furthermore, "[t]he plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006) (quoting *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990)).

Both forms of indirect infringement require the plaintiff to prove corresponding acts of direct infringement. *See DSU Med. Corp.*, 471 F.3d at 1303. Importantly however, a patentee may prove both indirect infringement and the corresponding direct infringement by circumstantial evidence. *See Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006). "There is no requirement that direct evidence be introduced, nor is a jury's preference for circumstantial evidence over direct evidence unreasonable per se." *Id.* Moreover, "[t]he drawing of inferences, particularly

in respect of an intent-implicating question . . . is peculiarly within the province of the fact finder that observed the witnesses." *Rolls-Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1110 (Fed. Cir. 1986); *see also Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1378 (Fed. Cir. 2005) (declining to disturb jury's verdict because intent to induce infringement "is a factual determination particularly within the province of the trier of fact").

### Direct Infringement by SNF's Customers

First, SNF argues that ClearValue failed to present legally sufficient evidence of direct infringement by an end user of SNF's products, which is a required element of ClearValue's contributory infringement and inducement claims. SNF argues that ClearValue offered only unsupported speculation from Greg Simpson, former Altivia employee, and Jim Stoll, ClearValue's technical expert, to support a showing of direct infringement by SNF's customers. Simpson testified that Altivia purchased high molecular weight DADMACs from SNF, as well as two other companies. Trial Tr. 4/13/10 A.M., 18:17–19:4, 19:22-25. Simpson went on to explain that when he was employed with Altivia, he investigated whether Altivia was infringing the '690 patent. *Id*. at 9:18–10:1. Simpson's investigation revealed that "there was a good chance [Altivia was] tromping on the patent." *Id*. at 10:8-16. Stoll testified that an Ergon refinery in Newell, West Virginia was using SNF's product blended with ACH in an infringing manner to treat low alkalinity water drawn from the Ohio River. Trial Tr. 4/14/10 P.M., 168:20–170:5.

SNF argues that ClearValue's presented testimony was mere speculation of direct infringement and a jury could not conclude from Simpson's and Stoll's testimony that SNF's accused products were used by Altivia or at the Ergon facility. However, legally sufficient evidence can be composed of either direct or circumstantial evidence. *See Liquid Dynamics*, 449 F.3d at

9

1219. Rich Rosenkoetter, SNF's former plant manager, testified that SNF sold "a fair amount of the . . . very high molecular weight DADMAC" and that he was not aware of any prevalent non-clarification uses of the DADMACs. Trial Tr. 4/12/10 P.M., 142:5–143:4. Stoll also testified that Baker Petrolite and Altivia purchased SNF's high molecular DADMACs. Trial Tr. 4/14/10 P.M., 171:13-21. Viewing the evidence in the light most favorable to the jury and drawing all inferences in favor of ClearValue, there is legally sufficient evidence to support the jury's conclusion of direct infringement by an end user of SNF's products.

### Required Molecular Weight

Second, SNF argues that ClearValue presented no scientifically credible evidence that SNF's accused products meet claim 1's molecular weight requirement. SNF further argues that ClearValue skewed the Court's definition of relevant claim terms to confuse the jury. The Court defined the term "high molecular weight di-allyl di-methyl ammonium chloride (DADMAC)" as "a high molecular weight DADMAC having a molecular weight range of about 1,000,000 or greater as measured by viscosity, osmotic pressure, light scattering, gel permeation, chromatography, ultracentrifugation, and/or similar accepted methods." Docket No. 255 at 8. The Court also defined "molecular weight of at least approximately 1,000,000 to approximately 3,000,000" as "a high molecular weight DADMAC having a molecular weight range of about 1,000,000 to approximately 3,000,000 as measured by viscosity, osmotic pressure, light scattering, gel permeation, chromatography, ultracentrifugation, and/or similar accepted methods." Docket No. 255 at 10.

Before the Court's construction, SNF urged the Court to include the term "average" in the above definitions to prevent an alleged infringer from being found to infringe because only a few polymers fall within the molecular weight range of about 1,000,000 or greater. Although the Court

recognized that SNF's concern was one they may have to address at trial, the Court rejected SNF's argument during claim construction because there was no intrinsic or extrinsic evidence to support a construction that included the word "average." During trial, SNF filed a motion to clarify the Court's *Markman* ruling. Docket No. 546. The Court denied the motion as to modifying the Court's construction, but allowed testimony and evidence regarding how molecular weight is measured, noting that it was up to the jury to determine the appropriate measurement of molecular weight given the Court's construction of the terms. Trial Tr. 4/16/10 A.M., 3:22–5:2. Consequently, both ClearValue and SNF presented evidence and arguments consistent with the Court's claim construction, and it was left up to the jury to decide whether SNF's accused products meet the limitations as defined by the Court.

The parties presented the jury with conflicting evidence regarding the molecular weights of SNF's accused products. At trial, SNF presented evidence showing that the appropriate measure for determining molecular weight of an organic polymer is the weight-average molecular weight, or $M_w$. SNF's expert, Dr. Mark Jordi, testified that the tests he performed using a standardized gel permeation chromatography ("GPC") in 2001 and using both the standard GPC and the tetra detection GPC method in 2006 revealed that SNF's accused products had a $M_w$ value of significantly less than 1,000,000. Defs. Ex. 41, 503, 504, 681; *see also* Trial Tr. 4/16/10 P.M., 160:1–161:6.

ClearValue cross-examined Dr. Jordi at length about his testing methodology, lack of viscosity testing, and the chain of custody of the tested samples. Trial Tr. 4/15/10 P.M., 180:6–181:4, 181:23–182:3. ClearValue further presented evidence showing that SNF's own internal documents indicated the 4600 and 4800 DADMAC polymers had molecular weights above the 1,000,000 threshold, and that SNF had represented the same to NSF International. Pls. Ex.17,

263, 401, 242.  Furthermore, Dr. Stoll testified that Dr. Jordi's testing revealed that SNF's accused products contained an effective amount of polymer molecules within the range of molecular weight values required by the patent and the Court's claim construction.  Trial Tr. 4/15/10 A.M., 59:20–60:16.  Accordingly, there was legally sufficient evidence before the jury to support the jury's conclusion that SNF's accused products meet the molecular weight requirement of claim 1 of the '690 patent.

***No Substantial Non-Infringing Uses (Contributory Infringement)***

Third, SNF argues that there is no evidence to support the jury's finding of no substantial non-infringing uses for SNF's accused products, and in fact, the evidence presented at trial establishes that there are numerous non-infringing uses of SNF's accused products.

A "substantial" use of an accused feature is one that is not occasional, farfetched, impractical, experimental, or hypothetical.  *See, e.g., Hoffmann-La Roche, Inc. v. Promega Corp.*, 33 U.S.P.Q. 2d 1641, 1648 (N.D. Cal.1994) ("Whether a use is 'substantial' or not depends on how likely and often the use will occur.  Thus, occasional aberrant use of a product does not make that use 'substantial.'  Similarly, inefficient and uneconomical uses are less likely to be deemed 'substantial.'").  The jury was presented with testimony that high molecular weight DADMACs can be used for "sludge dewatering," mining operations, and in personal care products such as cosmetics and shampoos.  Trial Tr. 4/15/10 A.M., 56:20–57:6, Trial Tr. 4/15/10 P.M., 29:20–31:7, 103:16-24.  However, Dr. Stoll testified that he was not aware of any substantial uses of the high molecular weight DADMACs other than to blend them with ACH to clarify water.  Trial Tr. 4/15/10 A.M., 57:7-15.  Thus, while SNF points to testimony regarding various other uses of high molecular weight DADMACs, the jury was presented with legally sufficient evidence based on Dr. Stoll's testimony

to conclude that SNF's proposed non-infringing uses were insubstantial.

*Active Inducement (Induced Infringement)*

Finally, regarding ClearValue's claims of induced infringement, SNF asserts that ClearValue presented insufficient evidence to show that SNF possessed an affirmative intent to induce others to infringe Claim 1 of the '690 patent.

SNF argues that SNF Holding Company's training materials and Chemtalk brochures only generally discuss the combination of a variety of organic polymers and inorganic compounds, but do not specifically mention blending high molecular weight DADMAC with ACH. However, Dr. Stoll testified that, in his opinion, SNF's training manuals and Dr. George Tichenor's deposition testimony regarding his training seminars "encourage[d] people to combine high molecular weight DADMACs with molecular weights in excess of a million of aluminum chlorohydrate to clarify water." Trial Tr. 4/14/10 P.M., 166:14–167:15. Dr. Stoll further testified that Dr. Tichenor's training reports show "the high molecular weight 4800 and 4620 as being combined with ACH or other aluminum products" and thus SNF was in fact "encouraging their supplier to combine those products." Trial Tr. 4/15/10 A.M., 42:8-16. While the evidence shows that SNF's materials discussed non-infringing products in various non-infringing combinations, the fact that SNF also instructs its customers to use the accused products in an infringing manner adequately supports the jury's finding of inducement. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318–19 (Fed. Cir. 2009) (allowing the jury's verdict of induced infringement to stand where the accused inducer designed the accused products to be used in an infringing manner and instructed its customers to use the accused products in both an infringing and non-infringing manner). Thus, based on the foregoing, there is legally sufficient evidence for the jury to conclude that the intent

requirement for inducement was satisfied.

Accordingly, as all of SNF's arguments have been rejected, the Court **DENIES** SNF's motion for JMOL of no indirect infringement of claim 1 of '690 patent. In addition, the jury's verdict finding contributory infringement and active inducement is not against the great weight of the evidence. Thus, the Court **DENIES** SNF's MNT on this issue.

### SNF'S MOTION FOR JMOL - DAMAGES[3]

SNF moves for JMOL that total patent damages in this case cannot exceed $172,617. In support of its motion for JMOL, SNF argues that ClearValue's damages opinion was unreliable and irrelevant and thus cannot support the jury's patent infringement damages award. SNF argues ClearValue's damages theory was flawed because: (1) Brent Bersin's assumption that 100% of SNF's high molecular weight DADMAC's would be blended with ACH overstates ClearValue's infringement damages; (2) Mr. Bersin's failure to consider the impact of the availability of non-infringing alternatives corrupted his analysis of the hypothetical negotiation; and (3) Mr. Bersin's opinion that 10% is a reasonable royalty rate failed to consider SNF's profit margins and overall industry profit margins, and was not based on a proper analysis of Georgia-Pacific Factor 1.

On the eve of trial, ClearValue filed a motion for continuance and a motion to admit Mr. Bersin's supplemental damages report for consideration by the jury. After a telephonic status conference with the parties, the Court denied ClearValue's motion for continuance, but without objection agreed to allow both sides' damages experts' reports into evidence for consideration by the jury. ClearValue proceeded to trial without a live damages expert and presented its damages theory by deposition testimony of Mr. Bersin and by submission of Mr. Bersin's supplemental expert

---

[3] As the Court has granted SNF's motion for JMOL of no misappropriation of Trade Secret #1, there is no need to address the portion of SNF's motion that deals with misappropriation damages.

report. The purpose of this Court's "gatekeeper" function under *Daubert v. Merrell Dow Pharmaceuticals, Inc.* is served by "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579 (1993). The Court rejects SNF's three arguments as there is sufficient evidence that Mr. Bersin's damages opinion is both relevant and rests on a reliable foundation. In addition, SNF presented its own damages theory live, and the jury was free to weigh the parties' distinct theories and evidence.

ClearValue's infringement damages demand was approximately $9.5 million, while SNF's damages model estimated damages at $172,617. The jury's verdict of $2,172,617 is exactly $2 million above SNF's damages model. Although this implies the jury favored SNF's damages theory and adjusted it accordingly based on the evidence before it, the Court will not speculate any further as to why or how the jury came to its conclusion. "[T]he factual determination of a reasonable royalty . . . need not be supported, and indeed, frequently is not supported by the specific figures advanced by either party." *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1167 (Fed. Cir. 1991). The jury's verdict of $2,172,617 is well within the amounts advocated by the parties' damages experts and is supported by sufficient evidence. Thus, the Court **DENIES** SNF's motion for JMOL on damages.

### SNF'S MOTION FOR JMOL & MNT - INVALIDITY

SNF moves for JMOL, or alternatively for a new trial, on the issue of invalidity of all the asserted patent claims based on anticipation, obviousness, on sale bar, and best mode. In order to show that it is entitled to JMOL on its affirmative defense of invalidity, SNF is required to prove the essential elements of that defense to a virtual certainty. *Bank Of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) ("For a defendant to obtain summary judgment on an affirmative

15

defense, it must establish beyond dispute all of the defense's essential elements.").

**Anticipation and Obviousness**

Regarding anticipation and obviousness, SNF asserts that: (1) claim 1 of the '690 patent is anticipated by the Hassick patent, the Steven K. Dentel's 1991 article "Coagulant Control in Water Treatment" ("Dentel Article"), U.S. Patent No. 1,512,022 ("the Corbett patent"), and U.S. Patent No. 5,395,536 ("the Brown patent") and (2) claim 1 of the '690 patent is obvious based on each of these prior art references, either alone or in combination. Dr. Frank Mangravite and Professor Andrew Barron testified for SNF regarding the Dentel article and Corbett and Brown patents. *See* Trial Tr. 4/15/10 P.M., 201:10–203:16 (Mangravite); Trial Tr. 4/16/10 P.M., 32:3-20, 33:6-9, 35:5–36:24, 38:20–43:14 (Barron). ClearValue cross-examined Mangravite at length regarding his anticipation and obviousness conclusions. Trial Tr. 4/16/10 A.M., 10:15–15:6. Although ClearValue did not specifically question Professor Barron regarding his opinion on the Corbett and Brown patents, ClearValue did challenge whether Professor Barron's opinions were based on a proper understanding of a person of ordinary skill in the art. *See* Trial Tr. 4/16/10 P.M., 28:11–32:12. Accordingly, the jury was free to disbelieve Dr. Mangravite's and Professor Barron's expert testimony.

The Hassick patent was considered by the patent examiner during the '690 patent's application process. Furthermore, ClearValue's argument that the Hassick patent "teaches away" from the true inventiveness of the '690 patent, although unavailing in the trade secret analysis, is applicable to the invalidity analysis. Dr. Stoll testified that it would not be obvious to one of ordinary skill in the art to combine a high molecular weight DADMAC with ACH to clarify water because Hassick demonstrated that such combination did not work well. Trial Tr. 4/14/10 P.M., 160:23–161:4. Dr. Stoll's testimony in this regard is more than sufficient evidence to support the

jury's finding of no anticipation or obviousness based on the Hassick patent. *See* Trial Tr. 4/14/10 P.M., 159:15–161:18. Moreover, the jury's verdict is not against the great weight of the evidence. Thus, the Court **DENIES** SNF's motion for JMOL and MNT on invalidity based on anticipation and obviousness.

**On Sale Bar**

SNF identifies three sales or offers for sale that it contends invalidate the patent under section 102(b): (1) SNF marketed and offered for sale a blend of high molecular weight DADMAC and ACH, identified as "14681," more than one year before the original '690 patent application was filed, Def. Exs. 188, 194, 679; Pl. Ex. 101; (2) another chemical manufacturer, Calgon, also manufactured, marketed, and sold a blend of high molecular weight DADMAC and ACH, identified as "EB-5000," more than one year before the '690 patent application was filed, Pl.'s Ex. 328, at 1-2, 6, 14, 19; and (3) Haase himself marketed and offered for sale his blend of high molecular weight DADMAC and ACH, identified as "CV 1777," in Nederland, Texas beginning in 1995, Trial Tr. 4/14/10 P.M., 126:13-16; Def. Ex. 349, at 22-23.

The "on sale" bar provides that a person shall not be entitled to patent an invention if it was the subject of a commercial offer for sale more than a year before the patent application and is "ready for patenting." *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998). An invention is "ready for patenting" when 1) it is reduced to practice before the critical date or 2) "the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Id.* at 67–68. Any attempt to use an invention for a profit, and not by way of experiment, will preclude the inventor from seeking a patent on his invention after more than one year. *Id.* at 65. The jury was specifically instructed that "[a] patent

claim is invalid if the invention recited in the claim was . . . on sale . . . more than one year before the application for the patent was filed and that . . . sale was not primarily for experimental purposes controlled by the inventor to test whether the invention worked for its intended purpose." Docket No. 559, at 18.

The "on sale" bar analysis also requires a determination of the applicable patent application date. Here, the parties disputed whether the '690 patent is entitled to the benefit of the September 16, 1997 original filing date of the parent application ("the '167 application"), or whether the controlling date is the August 12, 1998 filing date of the continuation-in-part application. SNF argued that the '690 patent is not entitled to the '167 patent application's filing date because the '167 patent application fails to satisfy the written description requirement to support the claims of the '690 patent. The "written description" requirement of 35 U.S.C. § 112 is met when the description "clearly allow[s] persons of ordinary skill in the art to recognize that he or she invented what is claimed . . . ." *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 866 (Fed. Cir. 1993). Whether the written description requirement has been met is a question of fact. *Id.* Thus, the jury verdict finding the patent not invalid is reviewed for substantial evidence. *Id.* Although it is impossible to deduce from the jury's verdict which priority date the jury gave the '690 patent, there was sufficient evidence before the jury for it to conclude the '690 patent was entitled to the benefit of the '167 application filing date.

With this priority date in mind, the Court must determine whether there was sufficient evidence for the jury to reject SNF's identified sales or offers for sale. SNF had the burden to prove invalidity by clear and convincing evidence. Regarding SNF's 14681 product and Calgon's EB-5000 product, there was legally sufficient evidence for the jury to conclude that these products did not

constitute prior art for purposes of on sale bar.  With respect to Haase's purported offer for sale of the CV 1777 product to Nederland, there was more than sufficient evidence for the jury to conclude that Haase's invention had not been reduced to practice or that the purported offer for sale was for experimental purposes.  Trial Tr. 4/16/10 P.M., 101:6–105:17.  Furthermore, although SNF criticizes Haase's explanation regarding his letter to Nederland, the Court "may not make credibility determinations or weigh the evidence" when deciding a motion for JMOL.  *Thompson v. Connick*, 553 F.3d 836, 851 (5th Cir. 2008).  The jury was free to believe Haase's explanation and reject SNF's claims of on sale bar.  Because the jury's conclusion that the '690 patent was neither anticipated nor obvious was not without evidentiary support and certainly not against the great weight of the evidence, the Court **DENIES** SNF's motion for JMOL and MNT on invalidity based on these grounds.

**Best Mode**

Lastly, SNF contends that the '690 patent is invalid because Haase failed to disclose his best mode of performing the blending step of his claimed process, which was the basis of ClearValue's Trade Secrets #2 and #3.  Specifically, SNF argues that Haase did not disclose his contemplated and known use of sodium persulfate as a catalyst in the manufacture of the DADMAC polymer and pH adjustment of the ammonium polymer to approximately 4.0 as the preferred method of the patented process.  ClearValue presented sufficient evidence for the jury to find that ClearValue's purported trade secrets regarding the manufacturing methods utilized to make the products used to clarify water were distinct from the actual method or process of clarifying water disclosed in '690 patent, and the jury's finding was not against the great weight of the evidence.  Trial Tr. 4/16/10 P.M., 98:1-17.  There is no reason to import ClearValue's purported trade secrets regarding manufacture of

DADMACs into claim 1 of the '690 patent. Thus, the Court **DENIES** SNF's motion for JMOL and MNT on invalidity based on best mode.

### *SNF'S MNT - NEWLY DISCOVERED EVIDENCE*

SNF also moves for a new trial based on the United States Patent and Trademark Office's ("USPTO") recent rejection of Haase's patent application 10/413,849 ("the '849 patent application"). The '849 patent application is Haase's continuation-in-part application to extend the scope of the '690 patent. Although not directly on point, the Court's method of handling interim office actions in reexamination proceedings is particularly instructive. In the reexamination context, this Court has held that an initial office action by the USPTO rejecting claims as unpatentable does not materially change the situation from when the USPTO first granted the reexamination. *Soverain Software LLC*, No. 6:04cv14, Docket No. 258, at 1 (E.D. Tex. April 29, 2005); *Forgent Networks, Inc v. Echostar Tech. Corp.*, No. 6:06cv208, Docket No. 403, at 5 (E.D. Tex. November 20, 2006); *Orion IP, LLC v. Mercedes-Benz, USA, LLC*, No. 6:05cv322, 2008 WL 5378040 (E.D. Tex. Dec. 22, 2008). Similarly, the Examiner's interim rejection of a continuation-in-part patent application that was not the subject of this lawsuit and was not before the jury at trial does not warrant a new trial. Thus, the Court **DENIES** SNF's MNT based on newly discovered evidence.

### CLEARVALUE'S MOTION FOR PREJUDGMENT INTEREST, POST-VERDICT DAMAGES, AND ATTORNEYS' FEES AND COSTS OF LITIGATION

ClearValue moves for prejudgment interest and post-verdict damages until the time of judgment. Although ClearValue did not specifically move for post-judgment interest, the Court awards ClearValue post-judgment interest pursuant to the provisions of 28 U.S.C. § 1961. ClearValue is also entitled to an award of prejudgment costs. 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement

but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."). ClearValue shall provide the clerk of this Court with a detailed bill of costs pursuant to Local Rule CV-54.

A court should award interest in patent cases after a finding of infringement. 35 U.S.C. § 284. The purpose of prejudgment interest is to place the patentee in as good a position as he would have been had the infringer paid a reasonable royalty instead of infringing. *Beatrice Foods v. New England Printing*, 923 F.2d 1576, 1580 (Fed. Cir. 1991). Prejudgment interest should be awarded unless there is a significant justification for withholding such an award, such as a delay in bringing suit against the infringer. *See Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983); *Bio-Rad Labs. v. Nicolet Instrument Corp.*, 807 F.2d 964, 967 (Fed. Cir. 1986). The interest rate used to calculate prejudgment interest and the method and frequency of compounding are left to the discretion of the district court. *See Uniroyal, Inc.*, 939 F.2d at 1545; *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1579–80 (Fed. Cir. 1988) (citing *Bio-Rad Labs.*, 807 F.2d at 969). Prejudgment interest can only be applied to actual damages and not punitive or enhanced damages. *Beatrice Foods*, 923 F.2d at 1580. Interest should be awarded from the date of infringement to the date of final judgment. *Nickson Indus., Inc. v. Rol Mfg.*, 847 F.2d 795, 800 (Fed. Cir. 1988).

SNF contends that ClearValue is not entitled to prejudgment interest in this case because of the delays caused by ClearValue's sanctionable conduct during the last trial. There is no evidence in the record that ClearValue unreasonably delayed in prosecuting this action against SNF such that prejudgment interest should be withheld. As the Court has determined it will not alter the jury's infringement damages award of $2,172,617, prejudgment interest will be calculated on this amount.

Although ClearValue contends the Court should calculate prejudgment interest based on the prime rate on the day infringement began, this is not the Court's normal procedure. Accordingly, prejudgment interest shall be awarded to ClearValue on the $2,172,617 infringement damages award at the prime rate as of August 12, 2010 compounded monthly through July 31, 2010 and compounded daily for the month of August 2010. Interest should be calculated from the date of infringement through the date of final judgment.

With regard to post-verdict damages, ClearValue requests a daily rate of $611 for post-verdict damages, calculated by extrapolating the jury's award of $2,172,617. SNF contends there is no basis for an award of post-verdict damages in this case because there was no finding of direct infringement and the manufacture and sale of SNF's accused products does not alone constitute infringement. Indeed, ClearValue is not seeking to enjoin SNF from manufacturing and selling its accused products as part of its requested injunctive relief. Although ClearValue cites to this Court's award of post-verdict damages in *i4i Ltd Partnership v. Microsoft Corp.* for support, that case involved willful, direct infringement and the defendant did not contest the award of post-verdict damages. 670 F. Supp. 2d 568, 596–97 (E.D. Tex. 2009). Here, there has been no finding of direct infringement or willfulness, and SNF opposes ClearValue's requested relief. Thus, because ClearValue has failed to show it is entitled to an award of post-verdict damages, Court declines to award such damages in this case.

Lastly, ClearValue moves the Court declare this case "exceptional" and award attorneys' fees pursuant to 35 U.S.C. § 285 and award ClearValue costs of litigation in accordance with 28 U.S.C. § 1920. Attorneys' fees and costs may be awarded in "exceptional cases" to the "prevailing party." 35 U.S.C. § 285. A case may be exceptional based solely on litigation misconduct and

unprofessional behavior. *Rambus, Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003); *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002). A case may be deemed exceptional on a party's or its counsel's display of bad-faith during either the pre-trial or trial stages. *Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1580 (Fed. Cir. 1986) (overruled on other grounds). A finding of willful infringement is a factor to be considered in determining if a case is exceptional. *See Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1329 (Fed. Cir. 1987). "However, 'exceptional cases' may, but are not required to, include the jury's finding of willfulness," and "[t]he decision to increase damages is committed to the discretion of the trial judge." *i4i*, 670 F. Supp. 2d at 594. The prevailing party seeking an attorneys' fee award has the burden of establishing that the case is exceptional by clear and convincing evidence. *Reactive Metals & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582 (Fed. Cir. 1985) (overruled on other grounds).

ClearValue argues that the Court should find this case exceptional because SNF argued this was an exceptional case based on ClearValue's litigation misconduct during the first trial and thus SNF should be judicially estopped to deny that this is an exceptional case. The Court rejects this argument at the outset as it has no merit and is unsupported by the law. Furthermore, ClearValue has failed to show by clear and convincing evidence that this case is exceptional. There was no finding of willful infringement in this case. Although that alone is not dispositive of the issue, ClearValue has not made a sufficient showing to warrant labeling this case exceptional or to support the award of attorneys' fees or costs of litigation. Accordingly, the Court declines to award ClearValue attorneys' fees and costs of litigation.

## CLEARVALUE'S MOTION FOR INJUNCTIVE RELIEF

ClearValue requests an order permanently enjoining SNF from practicing the technology claimed in the '690 patent. ClearValue proposes the following language:

1. **Defendants and all of those in active concert with them, to include their distributors and customers, are hereby enjoined from practicing the method of water clarification set forth in Claim 1 of U.S. Patent No. 6,120,690 without a proper legal license from the owner of said patent.**

2. **Defendants are further enjoined and required hereby to provide a notice to all of SNF and PRP's customers who have purchased any of the 4600 or 4800 series DADMAC products in the past, who have attended one of Dr. Tichenor's training sessions or received one of his training manuals, and/or who have received one or more of the ChemTalk publications, as follows, and to provide proof of same to counsel for Plaintiffs and to the Court:**

   **NOTICE OF POTENTIAL PATENT INFRINGEMENT:**
   **Use of this product in combination with aluminum chlorohydrate to clarify water of less than 50 ppm alkalinity has been found to infringe U.S. Patent No. 6,120,690. The United States District Court for the Eastern District of Texas has enjoined future infringing activities by the manufacturer of this product and by all in active concert with them, to include distributors and customers who purchase this product. Therefore, be aware that any violation of these intellectual property rights could subject the person practicing such method to a claim for monetary damages and to punishment for contempt of the Court.**

3. **Defendants shall attach a copy of the foregoing notice, in type style and face as that attached hereto, to each container of the product. A separate copy shall be provided to each customer along with the Certificate of Analysis or other documentation accompanying the shipment.**

4. **Defendants shall provide quarterly proof of compliance with these notice requirements to Plaintiffs for the remainder of the life of the patent.**

ClearValue's Proposed Final Judgment, Docket No. 586-2, at 2. Importantly, ClearValue "do[es] *not* seek an injunction that requires SNF . . . [to stop] making or selling high molecular weight DADMAC products." ClearValue's Memorandum in Support of Motion for Entry of Judgment,

Docket No. 586-1, at 9 (emphasis in original).

The decision to grant or deny injunctive relief is within the district court's discretion, which should be exercised consistent with traditional principles of equity. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006). A party is entitled to a permanent injunction only if: "1) [the party] has suffered an irreparable injury; 2) that remedies at law, such as monetary damages, are inadequate to compensate for that injury; 3) that, considering the balance of hardships between the [parties], a remedy in equity is warranted; and 4) that the public interest would not be disserved by a permanent injunction." *Id.* at 391.

First, although ClearValue contends that it and SNF's sister company, Polydyne, "were direct competitors" in the water clarification market, none of the entities found to have indirectly infringed are in direct competition with ClearValue. ClearValue further contends it has suffered irreparable injury because it has not only lost market share as a result of SNF's infringing products, but has also been driven out of business completely. SNF contends that ClearValue has not established a loss of market share resulting from SNF's accused products because there are numerous other substantial, non-infringing uses for their accused products. As the Court has already concluded there was sufficient evidence for the jury to find there are no substantial, non-infringing uses, this argument is unpersuasive. "Past harm to a patentee's market share, revenues, and brand recognition is relevant for determining whether the patentee 'has suffered an irreparable injury.'" *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010). The negative effect on ClearValue's market share and other aspects of its business as a result of SNF's infringing acts is more than adequate to support a finding of irreparable harm.

Second, ClearValue contends that monetary damages would not be an adequate remedy

because the losses it suffered as a result of SNF's infringing acts are difficult to quantify. The violation of a patent owner's right to exclude can present a situation where monetary damages cannot adequately compensate the patent holder for that injury. For example, when an infringer saturates the market for a patented invention with an infringing product or damages the patent holder's good will or brand name recognition by selling infringing products, that infringer violates the patent holder's exclusionary right in a manner that cannot be compensated through monetary damages. This is because it is impossible to determine the portions of the market the patent owner would have secured but for the infringer's actions or how much damage was done to the patent owner's brand recognition or good will due to the infringement. In this case, Haase is the sole named inventor of the '690 patent and founder and CEO of ClearValue. The importance of the patented technology to ClearValue is without question. Although ClearValue has previously licensed its patent and is willing to continue to license it, ClearValue is clearly not after mere monetary objectives. Accordingly, the losses suffered by ClearValue as a result of the infringing activity cannot be compensated by monetary damages.

The balance of hardships also favors ClearValue. "[T]he parties' sizes, products, and revenue sources" are all factors to consider in assessing the relative effect of an injunction on the parties. *i4i*, 598 F.3d at 862. ClearValue's market share, revenues, and business strategy are all tied to the '690 patent and its other patents directed to methods of water clarification. On the other hand, SNF acknowledges that its infringing products comprise only a small fraction of their product lists. Furthermore, "the touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *Id* at 863. Because ClearValue is not asking that SNF be

enjoined from manufacturing or selling its accused products, giving ClearValue some limited injunctive relief would protect ClearValue's rights without having an adverse impact on SNF and the public. Accordingly, the balance of hardships and the public interest factors weigh in favor of ClearValue.

Finally, with regard to the scope of the injunction, SNF argues that ClearValue's proposed injunction relief is too broad because it: (1) covers not only SNF, but also "all of those in active concert with them," (2) is not narrowly tailored to the accused products, (3) unnecessarily requires a notice be attached to each container of the product, and (4) requires that SNF provide quarterly proof of compliance with notice requirements. If the Court concluded injunctive relief was appropriate in this case, SNF proposed the following alternative to ClearValue's language:

- **Defendants will send a letter to customers of SNF, Inc. who purchased a 4600 or 4800 product within one year of the date of this Court's final judgment, referencing the purchase of such product(s) and containing the following language: "Our records indicate that, within the past year, you or your company has purchased a 4600 or 4800 product from us. You are advised that those products are not licensed for use in combination with aluminum chlorohydrate (ACH) for the clarification of water having an alkalinity less than 50 ppm, in accordance with U.S. Patent No. 6,120,690."**

- **Defendants will place a similar advisory on bills of lading and invoices for 4600 and 4800 products, for the remaining life of the '690 patent. Such advisory would contain the following language: "You are advised that these products are not licensed for use in combination with aluminum chlorohydrate (ACH) for the clarification of water having an alkalinity less than 50 ppm, in accordance with U.S. Patent No. 6,120,690."**

SNF's Response to ClearValue's Motion for Entry of Judgment, Docket No. 593, at 12. ClearValue seeks injunctive relief to rectify past infringement and prevent future infringement by putting SNF's customers on notice that SNF's infringing products are not licensed for use in combination with

ACH to clarify water of less than 50 ppm alkalinity, in accordance with the '690 patent. SNF's proposal includes a narrowly tailored advisory that adequately puts SNF's customers on notice of a possible infringement. Moreover, at the post-verdict hearing, ClearValue informed the Court that "[t]he problem with [SNF's] notice . . . is it doesn't stop anyone from infringing nor does it put any customer who buys [SNF's infringing products] and blends [them] with ACH to treat low alkalinity water on notice that they could be subject to monetary damages or contempt of Court." Post-Verdict Hrn'g Tr. 6/9/10, 35:19-24. The injunction need not spell out the consequences of using SNF's products in an unlicensed manner, it need only provide notice that the products are not licensed for a specific use.

Accordingly, the Court adopts SNF's proposed injunctive language. Although SNF requests that the Court stay the injunction pending appeal, given the narrowly tailored language of the injunction, and the fact that SNF will not be irreparably harmed in the absence of a stay by the limited injunctive relief awarded to ClearValue, the Court orders SNF to comply with the injunction within 60 days of the date of this order.

## CLEARVALUE'S MOTION TO VACATE SANCTIONS AWARD

ClearValue moves the Court to vacate its prior sanction award against ClearValue and Haase in light of evidence adduced at trial regarding SNF's purportedly intentional "out of spec" shipments. Although ClearValue contends that the Court's prior sanctions order is interlocutory in nature, it cites no authority for this proposition. SNF contends that there is no evidence SNF engaged in fraudulent conduct, and ClearValue is once again attempting to re-litigate the March 2007 sanctions hearing. The Court found against Haase at the March 2007 sanctions hearing and issued a written opinion. Docket No. 310. The sanctions order was appealed, and while the Federal Circuit reversed

the Court's order as to the actual sanctions imposed, it affirmed the Court's factual determinations regarding sanctionable conduct and affirmed the award of $121,107.38 in attorneys' fees as a sanction against ClearValue and Haase. *See ClearValue Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291, 1303 (Fed. Cir. 2009). On remand, rather than put its sanctionable conduct behind it, ClearValue has persisted in re-raising the issue. The Court refused to re-open the sanctions issue pre-trial, and similarly refuses to do so post-verdict. *See* Docket No. 385. Morever, ClearValue voluntarily dismissed its fraud, conspiracy, and breach of contract claims, and the Court declines to address these issues under the cloak of ClearValue's motion to vacate sanctions award. However, the Court offsets the amount of the Judgment by the amount of the sanctions award against Haase and ClearValue in the amount of $121,107.38.

## CLEARVALUE'S MOTION FOR DECLARATORY RELIEF

ClearValue also requests that the Court declare the '690 patent both valid and infringed as SNF sought a declaratory judgment on invalidity and non-infringement. Based on the jury's verdict and the Court's Final Judgment, this relief is moot.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW - INEQUITABLE CONDUCT [4]

SNF moves the Court to find the '690 patent invalid for inequitable conduct based on the grounds that Haase: (1) did not accurately report the underlying jar test data to the USPTO in the '690 patent application, (2) failed to disclose to the USPTO that the jar test examples quoted in the '690 patent did not prove the non-obviousness of the claimed method, (3) submitted certain affidavits to the USPTO which contained material misrepresentations, (4) failed to disclose to the USPTO his 1995 offers to sell the invention claimed in the '690 patent, and (5) failed to disclose the

---

[4] To the extent that any conclusion of law is deemed to be a finding of fact, it is adopted as such; and likewise, any finding of fact that is deemed to be a conclusion of law is so adopted.

Brown patent to the USPTO.

The standard for showing inequitable conduct is stringent and well known. "Inequitable conduct resides in failure to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and convincing evidence." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988); *see also Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1313 (Fed. Cir. 2008). Because an actual "intent to deceive" is required, "[m]istake or negligence, even gross negligence, does not support a ruling of inequitable conduct." *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1353 (Fed. Cir. 2008). A court only has discretion to invalidate a patent for inequitable conduct after a showing of both materiality and intent to deceive. *Id.* When examining intent, the alleged conduct must be "viewed in light of all the evidence, including evidence indicative of good faith." *Kingsdown*, 863 F.2d at 876. However, when a "failure to disclose" is alleged, intent to deceive may be inferred when 1) highly material information is withheld, 2) the applicant knew of the information and knew or should have known of the materiality of the information, and 3) the applicant has not provided a credible explanation for the withholding. *Praxair*, 543 F.3d at 1313–14.

**Materiality**

The jury found that the '690 patent was not invalid. Thus, the jury found that Haase's 1995 purported offers to sell the invention claimed in the '690 patent and the Brown patent were either not prior art or immaterial to the invalidity of the '690 patent. As for the affidavits submitted by Haase, although ClearValue does not dispute that the affidavits contain false information, it presented a reasonable explanation for the false submission at the post-verdict hearing. Post-Verdict Hrn'g Tr. 6/9/10, 27:1-10 ("The only thing I would say about the affidavit is, is I think it is clear

30

what happened. There was a similar affidavit for Richard Haase, and nobody has ever contested that he didn't have the ability to sign that. So these other two were obviously—they used—somebody stupidly, embarrassingly used Haase's affidavit as a template for the others, but they were cumulative submissions to the Patent Office and certainly don't rise to the level that is required to establish inequitable conduct."). Accordingly, the only grounds remaining are SNF's issues with Haase's reporting of the jar test data.

SNF contends that the Haase violated his duty of disclosure to the USPTO by submitting test data that was materially different than the actual underlying data and contained material omissions and misrepresentations of facts. Specifically, SNF contends that Haase misrepresented blending ratios, turbidity, color, and alkanity values, and settling time in the jar test data submitted to the USPTO, and failed to perform adequate testing to find the "sweet spot." "[I]nformation is material when a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1297 (Fed. Cir. 2008). However, information is not material if it "is cumulative of other information already disclosed to the PTO." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1367 (Fed. Cir. 2008). Haase testified that the data submitted was merely a summary, and that complete testing was performed at each test site. Haase testified that he gave all the jar tests to his patent prosecution counsel and summaries were then created. Trial Tr. 4/20/10, 206:7-16. The evidence shows that Haase and his patent counsel only submitted jar test summaries to the USPTO because submission of every single jar test performed would be unworkable. Dr. Frank Mangravite was SNF's sole witness with regard to inequitable conduct. Dr. Mangravite testified that the misrepresented and omitted jar test data was material. However, in light of all the submitted jar test data and other

references before the patent examiner, including the Hassick patent, the materiality of the misrepresentations and omissions is low.

**Intent**

Regardless of the materiality of the misrepresented or omitted jar test data, the evidence showed that Haase did not possess the requisite intent to deceive the USPTO. A lesser showing of materiality requires a greater showing of intent. *See Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006). Although deceptive intent can be inferred from indirect and circumstantial evidence, it still must be clear and convincing. *Star Scientific*, 537 F.3d at 1366. Furthermore, "the inference must not only be based on sufficient evidence and be reasonable in light of that evidence, but it must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard." *Id*. Thus, in order to create an inference of deceptive intent, SNF must prove that Haase knew or should have known that the information that Haase failed to disclose to the USPTO was material. *Praxair*, 543 F.3d at 1313-1314.

Haase maintained that he performed all required testing, and Haase's testimony adequately addressed Dr. Mangravite's criticisms regarding his jar test disclosures. Trial Tr. 4/20/10, 204:25–226:6. Haase testified that in every report sent to the patent office he always included a sweet spot and reported information to best of his ability, but acknowledged that he may have made mistakes. *Id*. at 206:17–207:6. Haase further testified that "[n]othing was ever intended to mislead anyone." 225:1-2. Furthermore, the record shows that the '690 patent application was prosecuted by competent patent counsel from two reputable firms with expertise in prosecuting chemical patents. Trial Tr. 4/20/10, 204:25–206:24. Haase indicated that during testing, summary sheets were created to manage the large amount of individual data sheets produced, but that he provided all jar

test data he kept to his patent counsel. Trial Tr. 4/20/10, 206:7-16; 224:13–225. Importantly, SNF made no accusations that Haase's patent attorneys committed inequitable conduct, and SNF did not introduce any evidence that the attorneys themselves had any intent to deceive the USPTO.

Ultimately, SNF failed to present clear and convincing evidence that Haase omitted or misrepresented material information with the intent to deceive the USPTO. "Just as it is inequitable to permit a patentee who obtained his patent through deliberate misrepresentations or omissions of material information to enforce the patent against others, it is also inequitable to strike down an entire patent where the patentee only committed minor missteps or acted with minimal culpability or in good faith." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008). The totality of evidence supports a conclusion that although Haase made some mistakes, he acted in good faith and was candid with the USPTO. As a result, the Court does not find that the '690 patent is invalid on the basis of inequitable conduct.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Defendants' motion for JMOL and MNT (Docket No. 583) only as to misappropriation of Trade Secret #1 and **DENIES** the motion in all other respects, **GRANTS** in part Plaintiffs' motion for entry of final judgment (Docket No. 586), and **DENIES** Plaintiffs' motion to vacate sanctions award (Docket No. 587) in its entirety. The injunctive relief provided for herein will be memorialized in a separate order.

**So ORDERED and SIGNED this 12th day of August, 2010.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**